UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **RAD J. SAVOIE** | **13-11663** |
| | SECTION A |
| DEBTOR | CHAPTER 13 |
| | |
| **DANNY JOSEPH GRAY** | ADVERSARY NO. |
| PLAINTIFF | **13-1100** |
| VERSUS | |
| **RAD J. SAVOIE** | |
| DEFENDANT | |

**SUPPLEMENTAL REASONS FOR DECISION**

**I. Background**

On October 22, 2013, a Motion to Extend the Deadline to Object to Debtor's Discharge or to Challenge the Dischargeability of Certain Debts was filed on behalf of creditor, Danny Joseph Gray ("Gray").[1]  On January 16, 2014, this Court denied the Motion.[2]  On February 19, 2014, Gray filed a Motion for New Trial seeking to introduce additional evidence in support of the above-referenced Motion.[3]  Granting Gray's request for new trial, trial was held on March 21, 2014.[4]

---

[1] 13-11663, P-27.

[2] 13-11663, P-47.

[3] 13-11663, P-51.

[4] 13-11663, P-64; Adv. P, 13-1100 P-38.

**II. Facts**

In 2000, Gray hired Richard A. Thalheim, Jr. ("Thalheim") as counsel on a contingency fee basis to represent him in a personal injury action filed against the debtor, Rad J. Savoie ("Savoie"). Gray filed suit in the Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana ("17th JDC"),[5] and on December 2, 2004, obtained a judgment against Savoie in the amount of $136,504.28, together with legal interest and costs ("Judgment").[6]

No further action was taken on the Judgment until on April 16, 2013, Thalheim filed a request for Judgment Debtor Rule against Savoie in the 17th JDC ("JD Rule"). The JD Rule was set for June 17, 2013.[7]

On June 14, 2013, three days prior to the scheduled JD Rule, Savoie filed a Voluntary Petition for Relief Under Title 11, Chapter 13 of the Bankruptcy Code. On that same date, Savoie's counsel faxed Thalheim notification of Savoie's pending bankruptcy and that the JD Rule was stayed.[8] On June 17, 2013, Thalheim received notice of the filing and relevant deadlines by mail including, that the deadline to object to Savoie's discharge or to challenge the dischargeability of certain debts ("the dischargeability deadline") was September 23, 2013.[9]

No objections to discharge or dischargeability were filed as of September 23, 2013. Thalheim filed a proof of claim for $99,739.30 on October 15, 2013, allegedly for fees owed to him

---

[5] 13-11663, P-66 at 6; Adv. P. 13-1100, P-44 at 6.

[6] 13-11663, P-27 at 8-9.

[7] 13-11663, P-43 at 6-8.

[8] 13-11663, P-43 at 3.

[9] 13-11663, P-12.

under the Judgment. Gray filed a proof of claim on October 22, 2013 for amounts due under the Judgment. The proof of claim lists Thalheim for notice.

After receiving the notices of bankruptcy filing, Thalheim contacted Savoie's bankruptcy counsel, Mary Taylor ("Taylor"). Thalheim did not tell Taylor that he did not know Gray's whereabouts.

Thalheim discussed the bankruptcy process with a regular bankruptcy practitioner and the possibility of objecting to Savoie's discharge. However, other than filing a proof of claim on his own behalf, he took no further action. Subsequent to the passing of the discharge deadline, Thalheim decided to locate Gray because he believed that collection on his proof of claim might be stronger if Gray was also a claimant. On October 21, 2013, Thalheim contacted Gray's mother at her residence in an attempt to locate Gray.[10] Thalheim told Mrs. Gray that he was looking for Gray and that it was urgent that he speak with him. Gray's mother passed on the message to Gray and he immediately contacted Thalheim. Thalheim filed Gray's proof of claim the following day. However, Gray was too late to object to Savoie's discharge, so Thalheim filed the instant Motion to Extend the Period to Object to Dischargeability.

Gray argues that he is entitled to an extension of the September 23, 2013 dischargeability deadline because he was not notified of the bankruptcy proceeding until October 21, 2013.

**II. Analysis**

Savoie's bankruptcy proceeding was prompted by the setting of Gray's JD Rule. During the ten (10) years after the Judgment was rendered, Gray had not attempted to collect. According to the

---

[10] At the time Thalheim represented Gray, ten (10) years' earlier, Gray was living with his mother at the same location where his mother continued to reside.

record, Gray and Savoie had no communications following the taking of the Judgment by Gray. However, as prescription on the Judgment neared, Thalheim, Gray's counsel in the underlying suit, filed a request for JD Rule against Savoie without his client's knowledge or direction.

Having lost contact with Gray, Savoie listed Thaleim on his schedules and mailing matrix in an effort to notify Gray of the pending bankruptcy and related deadlines. He also filed a notice of bankruptcy filing with the state court and civil sheriff. Thaleim admits to receiving the notice of bankruptcy filing and relevant deadlines.

Savoie's bankruptcy proceeded without event. Savoie's chapter 13 plan of reorganization was confirmed on August 29, 2013 and the deadline to object to discharge passed on September 23, 2013. On October 22, 2013, subsequent to the deadline to object, Gray filed a Motion to Extend Time to Object to Discharge. He was represented by Thalheim. Also on October 22, 2013 Gray filed the instant adversary proceeding objecting to the dischargeability of the Judgment. Again, Thalheim was counsel of record.

Having missed the deadline to file a dischargeability action, Gray argues that Savoie's notice to him through his counsel was insufficient to satisfy due process. As a result, he should be allowed an extension of the period to file as he was not properly noticed of the bankruptcy case or relevant deadlines.[11]

Notice is sufficient if it is "reasonably calculated" to inform interested parties of a pending action and afford them with an opportunity to present their objections. *Mullane v. Central Hanover*

---

[11] Similarly, Gray testified that he had no contact with Thalheim between 2004, when the Judgment against Savoie was obtained, and October 21, 2013, when his mother advised that Thalheim was trying to locate him. Because he had no contact with Thalheim from 2004 to 2013, Gray asserts that Thalheim's notification of the bankruptcy proceeding did not constitute notice to him.

4

*Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Supreme Court explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; *Priest v. Board of Trustees of Town of Las Vegas*, 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751; *Roller v. Holly*, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean*, *supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly*, *supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied....
>
> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, *compare Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Mullane*, 339 U.S. at 314-15, 70 S.Ct. at 657-58.

When Savoie filed for bankruptcy relief, he was unaware of Gray's whereabouts. However, having been recently served with the JD Rule, Savoie believed that Thalheim was still representing Gray in connection with collection on the Judgment. As a result, Savoie listed Thalheim as the party to receive notice of his bankruptcy filing and relevant deadlines.

At the hearing on this matter, Thalheim testified that he did not represent Gray in connection with the JD Rule. Thalheim insisted that his representation of Gray terminated shortly after the Judgment was taken. No effort to collect on the Judgment was ever exercised because neither Gray

5

nor Thalheim believed the Judgment was collectible. As the ten (10) year prescriptive period approached, Thalheim decided *on his own* to file a request for a JD Rule. Unable to locate Gray, Thalheim nevertheless filed the request as Gray's counsel.

Thalheim asserts that he had standing to request the JD Rule without Gray's consent. Thalheim avers that as a result of his contingency fee, he has an interest in the Judgment and may pursue its collection independently of Gray. Thalheim's position is not supported by Louisiana law. As counsel for Gray, he may have a privilege on the proceeds collected from the Judgment, but he does not have authority to act without his client's direction.[12]

In any event, Thalheim's relationship to his client is of no moment, except that it indicated to both Savoie and Taylor that Thalheim was actively representing Gray and presumably could deliver him the notice of Savoie's bankruptcy filing. Debtors may list a creditor in care of an attorney, provided the attorney is the creditor's agent in the context of the bankruptcy case. *In re Schicke,* 290 B.R. 792, 802 (Bkrtcy 10th Cir. BAP 2003). In this case, Thalheim was not Gray's bankruptcy counsel prior to the filing for relief. However, attorneys who represent judgment creditors in a state court action for debt collection may also be a creditor's agent for notice. *In re Slaiby*, 57 B.R. 770, 772-73 (D.N.H. 1985) (notice to attorney who represented creditor in action

---

[12] Under Louisiana law an attorney, by written contract with his client, "may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property . . . ." Louisiana law also provides attorneys with a "special privilege" for the amount of their fees, with the privilege ranked "as a first privilege" superior to all other privileges. An attorney, however, does not acquire actual ownership of the suit or judgment arising from his or her representation. "[T]he 'interest in the subject matter of the suit, proposed suit or claim' safeguarded by [LSA-R.S. 37:218(A)] is . . . no more than a privilege granted to aid the attorney's collection of a fully earned fee out of the fund which the satisfaction of the client's claim yields."
    As Thalheim was not a co-owner of the judgment arising from his representation of Gray, he had no right to act on his own behalf to secure the judgment. He could only act on behalf of Gray, the owner of the judgment. In the April 16, 2013 "Motion and Order to Examine Judgment Debtor," Thalheim represented that he was acting on behalf of Gray, stating that Gray was filing the motion "through undersigned [counsel]."

6

for debt collection was deemed sufficient for the purpose of putting the creditor on notice of bankruptcy proceeding).

A person desirous of actually notifying the absentee creditor of the pending action might reasonably adopt the means employed, *i.e.*, by notifying counsel who presumably represented the creditor in collection. Nevertheless, while Taylor had no way of knowing that Thalheim did not represent Gray, it is still Savoie's burden to establish that notice was sufficient. *Matter of Faden*, 96 F.3d 792, 795 (5th Cir. 1996) (burden of proof rests with debtor to show that creditor had notice).

Savoie alleges that in addition to notifying counsel, measures were taken to locate and personally notify Gray. Taylor testified that she questioned her client regarding the whereabouts of Gray and was informed that her client did not know Gray's address or the address of any of his relatives. In an effort to obtain this information, Taylor utilized whitepages.com for Lafourche Parish but no address could be found.[13] Savoie maintains that notice to Thalheim was a form of notice "not substantially less likely to bring home notice than other feasible and customary substitutes."

Gray argues that counsel's efforts to locate him were insignificant, suggesting that counsel should have hired an investigator.[14] However, "[t]o comply with the requirements of due process, the debtor is not required to conduct an 'impractical and extended' search for all creditors and their addresses." *In re Riverchase Apartments, L.P.*, 184 B.R. 35, 39 (Bankr. M.D. Tenn. May 10, 1993) (citing *Mullane*, *supra*). It is also significant that Gray represented that no one, including Thaleim and Savoie, knew of his whereabouts. Given that the Judgment in Gray's favor was almost ten (10)

---

[13] Taylor explained that such a search covers a 100 mile radius.

[14] 13-11663, P-66 at 3; Adv.P. 13-1100, P-44 at 3.

years old and no efforts to collect or enforce it had ever been taken, it is not surprising that neither Thalheim nor Savoie stayed in contact with Gray. Significantly, Gray made no effort to stay in touch with Savoie or Thaleim which begs the question, just exactly how was Savoie to locate and notify Gray?

This case presents a difficult choice. On the one hand, Savoie did not personally notify Gray of the filing of his bankruptcy case nor the relevant deadlines that might affect Gray. On the other hand, Savoie did notify a person he reasonably believed to be Gray's counsel and who would have both an obligation and interest in advising Gray of its effect.

It is also clear to this Court that Gray was completely disinterested in collecting, maintaining or preserving his claims against Savoie. Having made no attempts at collection for almost ten (10) years, Gray's participation in this case was prompted entirely by Thalheim.[15] In fact, the reason this Court originally denied the Motion to Extend was because Thalheim offered no proof to support Gray's lack of notice or to support Thalheim's claims that he did not represent Gray in connection with the JD Rule.[16] Then when the new trial was granted, Thalheim objected to any need to present Gray because he was "unsure Gray would even come to testify." As it turns out Gray did come, and confirmed that he did not learn of the bankruptcy until October 21, 2013. Against this backdrop, Gray seeks to preserve, through an untimely filed nondischargeability complaint, rights in a judgment that he clearly had no previous interest in enforcing or preserving and made absolutely no effort to protect.

---

[15] Thalheim testified that he looked for Gray because he thought his efforts to enforce the Judgment might be enhanced if Gray was participating in the bankruptcy proceeding. Ultimately, Thalheim located Gray through his mother, after contacting her on October 21, 2013.

[16] At the original hearing, the Debtor offered proof that the JD Rule was in Gray's name, with Thalheim listed as counsel for Gray.

Thalheim filed the JD Rule on behalf of Gray and Taylor had no reason to believe that Thalheim was not acting on Gray's behalf.  As a result, the Court finds that Savoie's June, 2013 notice to Thalheim was reasonably calculated to apprise Gray of the pending bankruptcy proceeding and that any failure of notice was due to Gray's complete lack of interest in the maintenance of his own claims.  Further, Savoie has met his burden that notice through Thalheim was not substantially less likely to bring home the notice than any other feasible or customary method.

A separate Order will be rendered in accord with these Supplemental Reasons for Decision.